UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

UNITED STATES OF AMERICA,                    :

                                             :

                                             :

             -against-                       :

                                             :

JOSE JIMENEZ,                                :

                         Defendant.          :

                                             :

------------------------------------------------------------- X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____                │
│ DATE FILED:_06/03/2016_              │
└─────────────────────────────────────┘
```

15 Cr. 496 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Defendant Jose Jimenez moves to dismiss his indictment, arguing that the statute under which he is charged, 18 U.S.C. § 922(g)(6), violates the Second Amendment. Defendant brings what he describes as a valid-rule facial challenge. In other words, he argues that the statute, as written, cannot constitutionally be applied to anyone, including him. Because Defendant does not meet the heavy burden for prevailing on facial constitutional challenges to legislation, the motion to dismiss the indictment is denied.

I.    **BACKGROUND**

According to the Complaint, on or about June 3, 2015, Jimenez was seated in the driver seat of a Volkswagen Jetta parked in a McDonald's Parking Lot. Seated in the front passenger's seat was another individual ("the passenger") who had earlier agreed to sell twenty guns to a New York City Police Department detective who was posing as a firearms buyer. After the passenger attempted to load the detective's car with a bag that did not contain any firearms, the passenger returned to Jimenez's car, and Jimenez drove them out of the parking lot.

Two agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") followed Jimenez's car for approximately three or four blocks before pulling the vehicle over. The agents removed the vehicle's occupants, conducted an inventory search of the Jetta and

recovered a loaded firearm under the passenger's seat.  Jimenez was then taken by car to the ATF office in the Bronx.  At the office, an ATF agent discovered a 9mm round in the front pocket of Defendant's pants.  When questioned, Defendant explained that when his car was being pulled over, the passenger tossed Defendant the bullet and attempted to place a firearm under the passenger's seat.

On July 1, 2015, Defendant was charged with unlawful possession of ammunition in violation of 18 U.S.C. § 922(g)(6), the federal statute prohibiting any person "who has been discharged from the Armed Forces under dishonorable conditions" from possessing firearms or ammunition in or affecting interstate commerce.  Defendant had previously served as a marine from June 2006 to 2012, and was convicted after a general court-martial on or about October 21, 2010, for conspiracy, failure to report theft of military property, unauthorized sale of military firearms, wrongful use of controlled substances, and receiving stolen military property and firearms.  On or about December 17, 2012, Jimenez was dishonorably discharged from the Marine Corps.

On July 28, 2015, a grand jury returned a one-count indictment against Jimenez charging him with unlawfully possessing ammunition after having been dishonorably discharged from the Armed Forces, in violation of 18 USC §§ 922(g)(6) and 2.  Defendant filed a motion to dismiss the indictment on December 4, 2015, arguing that the statute under which he is charged violates the Second Amendment.  A hearing was held on February 2, 2016, after which the parties submitted supplemental briefs.

## II.   **STANDARD**

"A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which

the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  Because "[t]he

fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances

is insufficient to render it wholly invalid," litigants bringing facial challenges must meet a

"heavy burden." *Id.*  The Second Circuit has upheld gun regulations after acknowledging

*Salerno*'s application to facial challenges in the Second Amendment context.  *See N.Y. State*

*Rifle & Pistol v. Cuomo*, 804 F.3d 242, 265–66 (2d Cir. 2015); *United States v. Decastro*, 682

F.3d 160, 163 (2d Cir. 2012) (citing *Diaz v. Peterson*, 547 F.3d 88, 101 (2d Cir. 2008), for

*Salerno* test); *see generally United States v. Moore*, 666 F.3d 313, 319 (4th Cir. 2012) ("Since

clearly there are cases where felon firearm possession is constitutionally limited, § 922(g)(1)

survives a facial challenge").

Jimenez argues that he is bringing a "valid-rule" facial challenge to § 922(g)(6) and not

an "overbreadth challenge."  By this he apparently intends that the court should apply a "means-

end" analysis first on which he would hope to prevail.  This, in his view, would conclude the

analysis; render the statute unconstitutional; and avoid any consideration of the constitutionality

of the statute in any specific case, including his own problematic one.  This approach would skirt

*Salerno*'s "no set of circumstances" test in resolving facial challenges to legislation.

## III.  DISCUSSION

As explained below, Defendant's challenge to § 922(g)(6) is rejected because he fails to

meet the high standard for facial constitutional challenges.

Federal legislation prohibiting veterans who had received other than honorable discharges

from possessing firearms and ammunition in interstate commerce was first passed in 1968 as part

of the Omnibus Crime Control and Safe Street Act,  Pub. L. No. 90-351, 82 Stat. 197, 236

(1968).  Its relevant provisions were amended the same year as part of the Gun Control Act of

1968.  Pub. L. 90-618, § 301(a)(1), 82 Stat. 1213, 1236.

      In its current form (which is not materially different from its form in 1968), the statute provides: "It shall be unlawful for any person . . . who has been discharged from the Armed Forces under dishonorable conditions . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."  18 U.S.C. § 922(g)(6).

      Since the statute's passage, two federal appellate courts have upheld its constitutionality. In *United States v. Karnes*, the Ninth Circuit upheld the constitutionality of the federal statute that prohibited dishonorably discharged veterans from possessing firearms.  437 F.2d 284, 287 (9th Cir. 1971).  The court upheld the statute under rational basis review, holding that "[t]he interests which are sought to be promoted by the classification are constitutionally permissible objectives" and that "Karnes has presented nothing to dispel the idea that any person who has committed some crime in the past might commit a crime of violence in the future."  *Id.* at 289. In reaching this conclusion, the *Karnes* court noted that "Congress found that 'the receipt, possession, or transportation of a firearm by . . . veterans who are discharged under dishonorable conditions . . . constitutes- (1) a burden on commerce or threat affecting the free flow of commerce, (2) a threat to the safety of the President of the United States and Vice President of the United States, (3) an impediment or a threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and (4) a threat to the continued and effective operation of the Government of the United States and of the government of each State."  *Id*. at 288–89 (quoting 18 U.S.C. App. § 1201).  The *Karnes* opinion omitted from this excerpt the fact that the 1968 legislation identified other

groups of individuals for whom -- like veterans discharged under dishonorable conditions -- the possession of a firearm constitutes a burden on commerce and a threat to safety and the exercise of free speech and religion.  Namely, "felons, . . . mental incompetents, aliens who are illegally in the country, and former citizens who have renounced their citizenship" were treated together with dishonorably discharged veterans under §§ 1201 and 1202 of Omnibus Crime Control and Safe Street Act.  82 Stat. 197 at 236.

In *United States v. Day*, the Sixth Circuit rejected a dishonorably discharged veteran's appeal of his conviction for unlawful possession of firearms.  476 F.2d 562 (6th Cir. 1973).  The Sixth Circuit rejected Day's constitutional challenge, holding under rational basis review that "[p]ossession of a firearm by a person dishonorably discharged from the Armed Services, while not as dangerous, perhaps, as possession by a convicted felon, is sufficiently risky to justify Congressional regulation."  *Id.* at 568.  The *Day* court noted that although there were no committee reports concerning the firearms regulation as applied to dishonorably discharged veterans, "there was considerable debate on the floor of the Senate."  *Id.*  The *Day* court quoted Senator Russell Long's statement from the Senate floor when the bill was debated.  In relevant part, Senator Long justified the regulation against dishonorably discharged veterans as follows: "[T]his is a matter of saying that if he cannot be trusted to carry arms for Uncle Sam, he cannot be trusted to carry arms on the streets.  This kind of person is part of the criminal element in many instances, the kind of person who does not know how to behave properly, and is a hazard to others when he possesses firearms."  *Id.*

Since these opinions, the constitutionality of § 922(g)(6) was never in serious dispute until the Supreme Court's 2008 opinion in *Heller*.  In *Heller*, the Supreme Court struck down two District of Columbia gun regulations as violating the Second Amendment: one banning

handgun possession in homes and another prohibiting rendering lawful firearms in the home

operable for the purpose of immediate self-defense.  *District of Columbia v. Heller*, 554 U.S.

570, 635 (2008).  In reaching its conclusion, the Court held that, "on the basis of both text and

history, . . . the Second Amendment conferred an individual right to keep and bear arms."  *Id.* at

595.  This right was violated by the regulations challenged in *Heller*, which infringed on "the

right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *Id.* at 635.

The *Heller* opinion acknowledged that it could not "clarify the entire field" of Second

Amendment regulation, but included language suggesting how lower courts should resolve future

cases.  For example, although the opinion stated that the statutes in *Heller* would be

unconstitutional "[u]nder any of the standards of scrutiny . . . applied to enumerated

constitutional rights," it clarified in a footnote that rational basis review would be inappropriate

in the Second Amendment context.  *See id.* at 628 & n.27 ("If all that was required to overcome

the right to keep and bear arms was a rational basis, the Second Amendment would be redundant

with the separate constitutional prohibitions on irrational laws, and would have no effect.").

Relevant to the statute in question here, this guidance discredits the analysis underlying the

holdings in *Karnes* and *Day*, as both upheld the statute concerning possession of firearms by

dishonorably discharged veterans under rational basis review.

The Court in *Heller* also stated, however, that "the right secured by the Second

Amendment is not unlimited" and that nothing in the opinion "should be taken to cast doubt on

the longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws

forbidding the carrying of firearms in sensitive places such as schools and government buildings,

or laws imposing conditions and qualifications on the commercial sale of arms."  *Id.* at 626–27

(footnotes omitted).  The Court explained that the "presumptively lawful regulatory measures"

specifically identified in the opinion were only "examples," and that the "list does not purport to be exhaustive." *Id.* at 627 n.26; *see also McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (repeating "assurances" of *Heller* and stating that the holdings in the two cases do "not imperil every law regulating firearms").

Since *Heller*, courts have addressed numerous challenges under the Second Amendment to legislation banning, for example, ownership of assault weapons and the possession of firearms by felons, illegal aliens and domestic violence misdemeanants. The Second Circuit has rejected nearly every challenge to gun regulations post-*Heller*.

In *Kachalsky v. County of Westchester*, the Second Circuit considered whether New York's handgun licensing scheme violated the Second Amendment by requiring an applicant to demonstrate "proper cause" to obtain a license to carry a concealed handgun in public. 701 F.3d 81, 83 (2d Cir. 2012). After noting that the Supreme Court's decision in *Heller* "in many ways . . . raises more questions than it answers," the court found that "state regulation of the use of firearms in public was 'enshrined with[in] the scope' of the Second Amendment when it was adopted" and held that intermediate scrutiny was appropriate. *Id.* at 88, 96. Under intermediate scrutiny, the court upheld the licensing scheme because "[r]estricting handgun possession in public to those who have a reason to possess the weapon for a lawful purpose is substantially related to New York's interests in public safety and crime prevention." *Id.* at 98.

In *United States v. Bogle*, the Second Circuit held that § 922(g)(1), which makes it unlawful for convicted felons to possess a firearm in or affecting interstate commerce, did not violate the Second Amendment. 717 F.3d 281, 281–82 (2d Cir. 2013) (per curiam). In *N.Y. State Rifle*, the court reviewed gun-control legislation by the New York and Connecticut legislatures prohibiting the possession of certain semi-automatic assault weapons and large-

capacity magazines.  804 F.3d at 247.  The court applied intermediate scrutiny to uphold the

majority of the regulations, striking down only a New York provision governing load limits and

a Connecticut regulation prohibiting a non-semiautomatic weapon.  *Id*. at 247, 260.  In other

cases, the court upheld statutes prohibiting transportation into a state of firearms acquired outside

the state, *Decastro*, 682 F.3d 160, and possession of a firearm in furtherance of a drug trafficking

crime, *United States v. Bryant*, 711 F.3d 364 (2d Cir 2013).

 Since *Heller*, no court has reviewed the constitutionality of 18 § U.S.C. 922(g)(6).

 As stated above, the Second Circuit held in *Bogle* that Congress could constitutionally

prohibit convicted felons from possessing firearms.  717 F.3d at 281–82.  The *Bogle* decision did

not articulate the reasoning for upholding the statute other than to quote the language from

*Heller* and *McDonald* that "recent developments in Second Amendment jurisprudence should

not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons."

*Id.* at 281.

 The opinion also cited several other circuit court opinions that offered various reasons for

upholding the statute.  *Id.* at 281–82 & n.1 (internal quotation marks omitted).  In *United States

v. Barton*, the Third Circuit upheld § 922(g)(1) because "denying felons the right to possess

firearms is entirely consistent with the purpose of the Second Amendment to maintain 'the

security of a free State.'"  633.F.3d 168,175 (3d Cir. 2011).  The court reasoned that because

felons are more likely to commit violent crime and have already forfeited other civil liberties

such as the right to vote or serve on a jury, they "are categorically different from the individuals

who have a fundamental right to bear arms.'"  *Id.* (quoting *United States v. Vongxay*, 594 F.3d

1111, 1115 (9th Cir. 2010)).  Similarly, in *United States v. Rozier*, the Eleventh Circuit held that

"statutory restrictions of firearm possession, such as § 922(g)(1), are a constitutional avenue to

restrict the Second Amendment right of certain classes of people" because a felon's "Second Amendment right to bear arms is not weighed in the same manner as that of a law-abiding citizen, such as the appellant in *Heller*."  598 F.3d 768, 771 (11th Cir. 2010).

The *Bogle* opinion is particularly salient to the current challenge first because the felon-in-possession statute, § 922(g)(1), was passed in the same legislation and for the same reasons as § 922(g)(6).  *See United States v. Skoein*, 614 F.3d 638, 640–41 (7th Cir. 2010) (en banc) (describing history of legislation against felons and noting that current felon-in-possession statute, as extended to non-violent felons, was not enacted until 1968); *id.* at 640 ("In 1968 Congress changed the 'receipt' element of the 1938 law to 'possession,' giving 18 U.S.C. § 922(g)(1) its current form.").

The Bogle opinion is also germane because it appears that the majority of individuals receiving dishonorable discharges have been convicted after a court-martial for offenses that could be prosecuted as felonies in civilian jurisdictions.  According to the Manual for Courts-Martial, "[a] dishonorable discharge should be reserved for those who should be separated under conditions of dishonor, after having been convicted of offenses usually recognized in civilian jurisdictions as felonies, or of offenses of a military nature requiring severe punishment."  Manual for Courts-Martial, Part II, Ch. X, Rule 1003(b)(8)(B), p.II-128 (2012 ed.).[1]  For example, the Government submitted statistics to show that "every (or nearly every) Marine and Navy sailor dishonorably discharged in the last two to three years was convicted at court-martial for having engaged in conduct that makes him or her a reasonable and constitutionally permissible subject of a Congressional ban on possession of firearms."  The Government's exhibits demonstrate that the strong majority had been convicted for serious crimes such as

---

[1]     The current version of the Manual for Courts-Martial was promulgated by executive order in 1984, and is revised annually.  Exec. Order No. 12473, 49 FR 17152 (1984).

sexual assault, rape and possession of child pornography.  In other words, because dishonorable discharges are typically awarded to servicemen convicted of what outside of the military would be a felony, § 922(g)(6) is presumptively valid for the same reasons that § 922(g)(1) is constitutional.

In addition, and most significant here, Defendant brings only a facial -- and not an as-applied -- challenge to § 922(g)(6).  Jimenez cannot establish that there are "no set of circumstances" under which § 922(g)(6) -- the statute imposing the same prohibition against dishonorably discharged veterans -- would be valid.  Jimenez's own facts illustrate a situation where a restriction on a dishonorably discharged veteran's ability to possess firearms or ammunition is constitutional.  As described in the opinion from his general court-martial, Jimenez pleaded guilty to multiple crimes involving a conspiracy to sell a stolen military assault rifle, wrongful disposition of stolen military property, drug use, wrongful receipt of stolen property and buying stolen property.  Of these offenses, at least the ones dealing with firearms would have subjected him to prosecution under federal and state laws against gun trafficking had he not been in the military.

Jimenez argues that the Government's statistics are not persuasive, in part because the Government does not explain why it chose to present statistics only for certain years and branches of the military.  Jimenez further argues that the Manual for Courts-Martial leaves room for the possibility that a serviceman can receive a dishonorable discharge for "offenses of a military nature" that would not otherwise be felonies in civilian jurisdictions.  He asserts that a "dishonorable discharge is categorically different from a conviction for a felony" because a person can be dishonorably discharged for offenses such as insubordinate conduct, malingering, adultery, bigamy, making disloyal statements, being absent without leave, disobeying a superior

officer, wrongful cohabitation and improper fraternization.  These arguments do not save Defendant's motion, as Defendant's own circumstances illustrate a constitutional application of § 922(g)(6) and therefore undermine his facial challenge.  The argument concerning the application of the statute to others discharged for lesser offenses is precisely the type of argument that can succeed only in as-applied challenges, and not in facial ones.  As the Second Circuit made clear in *Kachalsky*, "it is 'well-settled that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied to others, in other situations not before the Court.'"  *Kachalsky*, 701 F.3d at 101 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973)); *see also Decastro*, 682 F.3d at 163 ("It follows that a defendant who fails to demonstrate a challenged law is unconstitutional as applied to him has 'necessarily fail[ed] to state a facial challenge . . . .'").

Jimenez thus fails to meet the high standard governing facial challenges, under which "the challenger must establish that no set of circumstances exists under which the Act would be valid."  *Salerno*, 481 U.S. at 745.

## IV.  CONCLUSION

For the foregoing reasons, the motion to dismiss the indictment is DENIED.  The Clerk of Court is directed to close the motion at Dkt. No. 23.

Dated:  June 3, 2016
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE